PEOPLE ex rel. UNITED VERDE COPPER CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

TAXATION—CAPITAL OF MINING CORPORATION.

    The decision of the comptroller, in including in a mining corporation's capital employed in the state, and subject to taxation, bonds of a foreign railway corporation (of which it was the chief promoter) held by it, and claimed to have been purchased by the surplus profits of such corporation, on the assumption that as the mines of such corporation, which compose its whole capital, had been in operation for over 12 years the capital was thereby impaired, and that the surplus should be considered as capital, will not be disturbed, where there is nothing to show that the comptroller's estimate of the value of the mines was erroneous.

Certiorari by the United Verde Copper Company to review the decision of James A. Roberts, comptroller of the state of New York, in assessing a tax against relator, a domestic corporation, upon its franchise, together with a penalty; the basis of the assessment being the amount of its capital stock employed within this state. The relator complains of the inclusion in the valuation of the capital stock of bonds of a foreign corporation to the amount of $300,000, held by the relator as an investment, as it alleges, of its surplus earnings. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

H. G. Atwater, for relator.

G. D. B. Hasbrouck, Dep. Atty. Gen., for respondent.

LANDON, J. The relator was organized under the laws of this state in 1883 as a mining corporation, with a capital stock of $3,000,-000, all of which was issued in payment for certain mines and mining properties in the territory of Arizona. Since then it has carried on its mining operations there, and out of its so-called "profits" has yearly paid dividends, and also invested $300,000 in the bonds of the United Verde & Pacific Railway Company, a corporation organized in Arizona, in the interest of the relator, to construct a railroad from the relator's mines to another railroad about 25 miles distant. This railroad has been constructed. Its main business is to take away the product of the relator, and bring to it its supplies. The relator furnished the money to build and equip the railroad, and the bonds in question represent most of the money thus furnished. These bonds were in the possession of the relator in New York when the comptroller imposed the tax in question. All of the relator's business is done without this state, except some of its financial business, and such as pertains to its official residence in the city of New York. In that city it has an office, some furniture, and a bank account, employing capital for these purposes to the amount of $180,000, as fixed and taxed by the comptroller, of which the relator does not complain. The question upon which our decision depends is whether the $300,000 of bonds above mentioned were part of the capital stock of the company, or its surplus earnings. If capital stock, the tax was properly imposed. People ex rel. Edison Electric Light Co. v.

Campbell, 138 N. Y. 543, 34 N. E. 370; People v. Campbell, 88 Hun, 544, 34 N. Y. Supp. 801.   If surplus, the tax was erroneous.   People ex rel. Singer Mfg. Co. v. Wemple, 150 N. Y. 46, 44 N. E. 787.   The relator did not use these bonds in its business, otherwise than as securities, or as evidence of the indebtedness of the obligor to it. It did not borrow money upon them to use in its business.   The comptroller held that these bonds were capital stock, and not surplus, upon the assumption that, as the relator took mineral from its mines, it decreased their value, and thus impaired its capital stock.   No sales of the relator's capital stock have been made.   Its treasurer's statement is in evidence, as follows:

"As to the value of the mine and works, I could, of course, only furnish you an opinion, as the value of a mine is extremely problematical, and if the mine was exhausted the works would be useless."

The fact that the capital stock was paid for in mines and mining property probably eliminated the danger of an underestimate of the value of the stock in the first instance, and suggests that the earnings would be needed to hold the stock at par.   The operation of a mine for a dozen years may decrease its value by exhaustion, or increase it by development.   How it is in this case, we do not know.   The relator ought to show that the comptroller was wrong in his valuation.   People ex rel. American Concentrating & Dredging Co. v. Wemple, 129 N. Y. 562, 29 N. E. 812; ·People ex rel. Western Electric Co. v. Campbell, 145 N. Y. 587, 40 N. E. 239.   We do not think it has shown this.

Determination of the comptroller confirmed, with costs.   All concur.