PEOPLE ex rel. STUDEBAKER BROS. CO. OF NEW YORK v. KNIGHT, State Comptroller.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

TAXATION—FRANCHISE TAXES—REVISION BY COMPTROLLER—ADDITIONAL EVIDENCE—MANDAMUS.

> Tax Law 1896, § 195, provides that the comptroller may, within one year from the time an account for franchise taxes is audited and stated, and notice thereof sent to the company, revise such account on application therefor by the company, and, if it appears on such application that such account included taxes or other charges which could not have been lawfully demanded, he shall resettle the same, and shall forthwith send written notice of his determination on such application to the applicant. Section 196 prescribes that the action of the comptroller in revising any account may be reviewed both on the law and the facts by certiorari, and that the comptroller shall return on such certiorari the account and all the evidence before him on such application, and all the papers and proofs on the original statement of such account, and all proceedings therein. *Held*, that a corporation may apply to the comptroller for a resettlement of its franchise taxes on the evidence, papers, proofs, and proceedings had on the original statement of the account, and the comp-

troller must resettle the account, or enter an order denying the application; mandamus lying to compel the giving of notice of his determination.

Appeal from special term, Albany county.

Application for mandamus by the people, on the relation of Studebaker Bros. Company of New York, to compel Erastus C. Knight, state comptroller, to send written notice to the relator of his determination of an application to revise and readjust the franchise taxes of relator. From an order denying the application, relator appeals. Writ granted.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Young, Ver Planck & Prince (Henry A. Prince, of counsel), for appellant.

Henry B. Coman, Dep. Atty. Gen., for respondent.

CHASE, J. The relator is a domestic corporation liable to pay a franchise tax under the tax law of the state of New York. It has a capital stock of $5,000, consisting of 50 shares, of $100 each. The report of the relator for the year ending October 31, 1900, states that no dividend was paid by said corporation during said year, and that the capital stock employed within the state of New York was $5,000. The comptroller thereafter served a notice upon said company requiring an officer of the company to attend before a commissioner appointed by him for examination, and an examination of the vice president and treasurer of the corporation was had before said commissioner. The witness so examined stated that the gross assets of the company on the 2d day of January, 1891, was $167,642.84, and that the liabilities of said company amounted to $171,845.82. The comptroller settled the account with the relator, appraising the value of its capital stock at $167,642.84, and imposed a tax on it of $251.46. Thereafter the relator made application to the comptroller to revise and readjust such account, which was granted. At the day and hour fixed for a hearing on such application the relator appeared by counsel, and, in response to questions by the comptroller, stated that no officer or director of the company was present. He then stated to the comptroller:

"I formally ask for a revision and readjustment of the amount of the assessment of the Studebaker Brothers Company of New York, a New York corporation organized December, 1899, for which I am the attorney authorized to make this application, against which the comptroller has assessed a tax on the appraised valuation of capital stock at $167,642.84. This application is based upon the testimony before the comptroller, including original report filed by the company, and the testimony of Mr. Ennis, taken in New York before the commissioner."

To this the comptroller responded as follows:

"The comptroller declines to take any further action in this matter until you have produced an officer of this corporation for examination. The comptroller insists that the rehearing was granted, and declines to in any way entertain the new application, but offers to adjourn this rehearing in order that Mr. Prince may produce witnesses conversant with the financial condition of the company for the year ending October 31, 1900."

To this the attorney for the relator responded:

"I will simply say that the company regards the testimony already before the comptroller as substantially all it can adduce in its behalf, and maintains that on that testimony the assessment is erroneous. The Comptroller: You have no knowledge of what is before the comptroller? A. Yes; I know the testimony that was taken in New York at the instance of the comptroller. Q. That is all you know? A. And the statements filed by the company. Q. That is all you know about it, isn't it, Mr. Prince? A. I would not want to bind myself. I may know more. I know there can be no testimony that is counter to that taken in New York. The Comptroller: The comptroller declines to make any revision or readjustment of this account unless an officer of the corporation is produced, who may be examined, and who is conversant with the organization of the corporation and its financial transactions."

Subsequently the relator requested that the comptroller send written notice of his determination upon such application, pursuant to section 195 of the tax law, which request was denied. An application was then made, upon notice, to a special term of the supreme court, for a peremptory writ of mandamus to command the comptroller to forthwith send written notice to the relator of his determination upon such application. The special term refused to grant such writ, and from the order refusing to grant such writ this appeal is taken.

In considering this appeal and the decisions of the courts in regard to the matter of fixing the amount of the franchise tax of corporations, it is desirable to briefly review the steps in the history of the statute law relating to the subject.

By the corporation tax law of 1880 (chapter 542, Laws 1880), if the comptroller was not satisfied with the valuation of the capital stock of any corporation as made and certified by the treasurer and secretary thereof, he was authorized and empowered to make a valuation thereof, and to settle an account upon the valuation so made for the taxes due the state thereon; and any corporation dissatisfied with the account so settled was authorized to appeal therefrom to the board of equalization, which board was required to affirm or correct the account so settled, and the decision of said board was final.

In 1881 (chapter 361, Laws 1881) this statute was amended by providing that the appeal should be to a board consisting of the secretary of state, attorney general, and state treasurer.

In 1882 (chapter 151, Laws 1882) it was provided that, when the comptroller is dissatisfied with the report of any corporation whose capital is only partially employed within this state, he is authorized and empowered to· fix and determine the amount of capital stock which in his judgment shall be the basis for the tax; and a similar provision is included in regard to· an appeal as is contained in the act of 1881 above mentioned.

In 1885 (chapter 501, Laws 1885) the section in regard to the comptroller fixing and determining the amount of capital stock employed within this state, in case he is dissatisfied with the report, is amended, and the provision in regard to an appeal in such case is omitted; but in an added section included in the same chapter reference is made to a· writ of certiorari, showing that such writ is con-

templated for the purpose of reviewing the decision of the comptroller in regard to the amount of capital employed within the state.

In 1889 (chapter 463, Laws 1889) provision was made for a revision and readjustment of any account by the comptroller, as follows:

"Sec. 19. The comptroller may at any time revise, and readjust any account theretofore settled against any person, association, corporation or joint-stock company by himself or any preceding comptroller for taxes arising under this act or the act to which it is an amendment whenever it shall be made to appear by evidence submitted to him, that the same has been illegally paid or so made as to include taxes which could not have been lawfully demanded and shall resettle the same according to law and the facts and charge or credit as the case may require the difference, if any, resulting from such revision and resettlement upon the current accounts of such person, association, corporation or joint-stock company."

Section 20 expressly provided that the action of the comptroller in revising and resettling any account might be reviewed, "both upon the law and the facts," by certiorari, and that the comptroller shall return on such certiorari "the accounts and all the evidence submitted to him on such application, and if the original or resettled accounts shall be found erroneous or illegal by that court either in point of law or of fact the said accounts shall be there corrected and restated."

All of the statutes referred to were repealed at the time of the enactment of the tax law, and, as then rewritten, the sections (195 and 196) of the tax law relating to the revision and readjustment of accounts, and certiorari to review the same, are as follows:

"Sec. 195. The comptroller may at any time within one year from the time any such account shall have been audited and stated, and notice thereof sent to the person, partnership, company, association, or corporation against whom it is stated, revise and readjust such account upon application therefor by the party against whom the account is stated, or by the attorney general, and if it shall be made to appear upon any such application, by evidence submitted to him or otherwise, that any such account included taxes or other charges which could not have been lawfully demanded or that payment has been illegally made or exacted of any such account, he shall resettle the same according to law and the facts, and charge or credit as the case may require, the difference if any, resulting from such revision or resettlement upon the accounts for taxes of or against any such person, partnership, company, association or corporation. The comptroller shall forthwith send written notice of its determination on such application to the applicant, which notice may be sent by mail to his post office address."

Section 196 expressly provides that the action of the comptroller in revising and resettling any account may be reviewed, "both upon the law and the facts," by certiorari, and that the comptroller shall return on such certiorari "the accounts and all the evidence before him on such application and all the papers and proofs upon the original statement of such account and all proceedings thereon."

An examination of the printed records in cases where the determination of the comptroller has been brought up for review shows that even prior to the tax law of 1896 it was not a universal custom for the applicant to produce evidence at the time of the hearing of an application for revision and readjustment of an account. So far as we are able to ascertain, it has never been the practice of the comptroller to require an applicant for revision and readjustment of

an account to duplicate any of the evidence, papers, proofs, or proceedings before him upon which the original statement of the account was had. It will be seen that the word "rehearing" does not anywhere appear in the statutes. Whatever may have been intended by the statute as it existed prior to the tax law of 1896, the plain language of the statute as it has since existed seems to leave the corporation for whose benefit the revision and readjustment of the account is intended to determine whether, on such revision and readjustment, further and supplementary testimony shall be presented by it, or whether it shall rest its claim that the account includes taxes or other charges which could not have been lawfully demanded upon the evidence, papers, and proofs then before the comptroller. The statute, in effect, says that error may be shown, with or without the production of supplementary evidence. That the evidence, papers, proofs, and proceedings upon the original statement of the account before the comptroller are to be deemed before the comptroller on an application for a revision and readjustment of the account affirmatively appears by the requirements of section 196 of the tax law, directing what the comptroller shall return on the certiorari. Assume that by some oversight the comptroller had imposed a tax upon a corporation exempt from a tax on its corporate stock by section 183 of the tax law, and that such fact plainly appeared by the evidence, papers, and proofs before the comptroller, or, as is claimed in this case, the comptroller on the original statement of the account had before him all the evidence possible for the corporation to produce on the subject of the value of its capital stock; what reason is there for duplicating testimony already before the comptroller, unless the same is required by express provision of statute? There is no such express provision of statute. The authorities relied on by the respondent (People v. Carson, 78 Hun, 544, 29 N. Y. Supp. 619, and People v. Campbell, 139 N. Y. 68, 34 N. E. 753) do not sustain his position. These cases hold that the strict rules of evidence applied in actions do not govern in a proceeding before the comptroller. In a proceeding before the comptroller, it is for him to determine whether he will receive secondary evidence; and he may, in his discretion, require that witnesses appear before him in person, and that their evidence be taken orally. These authorities do not hold that the comptroller has any discretion in determining what material primary evidence he will receive, or that he may refuse to make any determination until some evidence is offered and received. If the comptroller is right in his contention, then to what extent could he continue his refusal to make any determination? Would he be required to act as soon as a single witness was sworn, or a single question was asked and answered? Surely the comptroller would have no right to direct the applicant as to the extent of the evidence to be produced before any determination would be made, or select or limit the subject or subjects upon which evidence would be received. The testimony, if any, offered by the applicant, must be competent and material; and, unless the comptroller consents to receiving secondary evidence, it must be the best evidence, within the rules prevailing in the trial of actions. In any event, the applicant must clear-

ly show by further evidence or otherwise that the account includes taxes or other charges which could not have been lawfully demanded, before he is entitled to a resettlement of the account. As the statute now stands, there is no right of appeal from an order of the comptroller settling the account. If a corporation against which an account is stated is not satisfied with the determination of the comptroller, it must point out the claimed error of law or fact to him, and thus give an opportunity to have the same corrected before the matter can be certified to and heard by the court. This procedure doubtless results in reducing the number of applications for certiorari. We are of the opinion that a corporation has the right to make application to the comptroller for such resettlement of the account upon the evidence, papers, proofs, and proceedings had upon the original statement of the account, and that, unless evidence is actually offered on such proceeding, it is the duty of the comptroller to resettle and readjust the account if it is clearly made to appear that the same is erroneous or illegal, and, if it is not so clearly made to appear, then an order should be entered denying the application for such resettlement and readjustment, and thus enable a corporation feeling itself aggrieved to bring the matter up before the court for review.

The order of the special term is reversed, with $10 costs and disbursements, and the motion granted, with $10 costs and disbursements. All concur.