(165 App. Div. 651)

RODEE et al. v. CITY OF OGDENSBURG et al. (No. 299-2.)

(Supreme Court, Appellate Division, Third Department. January 15, 1915.)

1. JUDGMENT (§ 740*)—CONCLUSIVENESS—MATTERS NOT PLEADED.

The decree in an action between a city and other owners of water power lots, for a construction of conveyances as to the rights of the parties, and for a determination of obligations, being unappealed from, is binding on the parties, even where imposing obligations outside the conveyances as to bridging streets.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1268; Dec. Dig. § 740.*]

2. JUDGMENT (§ 951*)—EVIDENCE TO SUPPORT—PRESUMPTION.

It will be presumed that a decree unappealed from, and acquiesced in by the parties for 40 years, was justified by the evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1808–1812; Dec. Dig. § 951.*]

3. ESTOPPEL (§ 62*)—AGAINST CITY—VOLUNTARY ACTS.

A city, by voluntarily maintaining bridges for 40 years after rendition of a decree, is not estopped to assert that the decree imposes on others the duty of such maintenance.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153; Dec. Dig. § 62.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. JUDGMENT (§ 533*)—CONSTRUCTION—EXISTING AND SUBSEQUENT CONDITIONS.

The decree, in a suit between a city and other owners of water power lots, imposing on such owners obligation to bridge a raceway on a street used principally for their business, and needing only an ordinary inexpensive bridge, does not require them to construct an expensive bridge to carry paving, when, years later, the street is by the state and city made a state highway.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 978, 983; Dec. Dig. § 533.*]

Howard, J., dissenting.

Appeal from Special Term, St. Lawrence County.

Action by Henry Rodee and others against the City of Ogdensburg and others. From an order (86 Misc. Rep. 229, 148 N. Y. Supp. 826) defendant city appeals. Modified.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Daniel W. Mulligan, of Ogdensburg, for appellant.
Dennis B. Lucey, of Ogdensburg, for respondents.

LYON, J. This is an appeal from an order denying the motion of the city of Ogdensburg for an order compelling the referees appointed in this action to repair or rebuild, and to keep in repair, the bridges over the canals, conduits, and raceways on Lake, Main, and River streets, in said city, pursuant to a decree entered in this action April 2, 1872. The principal questions in dispute are whether the city of Ogdensburg, or the power lot owners, are liable for the maintenance of the two bridges over the canal on Lake and Main streets, and the bridge over the raceway on River street.

In the year 1828 one Nathan Ford was the owner of a tract of land of upwards of $1,400 acres, situated mainly in the then town of Oswegatchie, on the westerly side of the Oswegatchie river, but with upwards of 250 acres thereof lying in the then village of Ogdensburg, on the easterly side of the river. Prior to that year a dam, connecting these two parcels of property, and hence being wholly upon the land of Ford, had been built across the river on or near the side of the present dam, by which the water of the river was impounded, and has been conveyed by means of canals, raceways, sluices, and other conduits, to mill sites upon the westerly side of the river, and also by a conduit to the portion of said land situated on the easterly side of the river, embraced in which is the water power company lot, owned and occupied by the village and the city of Ogdensburg as its water power plant. In the year 1828, and in the years immediately following, active development of the water power was had, and conveyances containing mutual covenants were made by Nathan Ford, his representatives and grantees, of mill sites in said tract, including the right to use certain quantities of water in the operation of the power plants erected upon said lots, and subject to certain restrictions and liabilities relative thereto specified in the conveyances thereof, and from time to time additional conduits were required and were constructed to serve additional power plants.

The two roadways, frequently mentioned in said coveyances, and known in earlier times as the Morristown Road and the Black Lake Road, running down the St. Lawrence river and up the Oswegatchie river, and now known as Main street and Lake street, respectively, are ancient highways, dating doubtless from the settlement of that part of the country, and were in existence long before the construction of the canal and other intersecting conduits. While there is nothing in the record indicating by what permission and under what agreement, if any, the power owners were allowed to construct a canal across Lake and Main streets and a raceway across Main street, requiring for the restoration of those highways the building and maintenance of bridges, yet it may reasonably be assumed that the exercise of that privilege formed the basis recognized in many of the early conveyances, including the partition deed, for the provisions requiring the building and maintenance by the power owners of bridges on both Lake and Main streets. The third highway upon which the maintenance of a bridge must be considered in this proceeding is River street, which is of much more recent creation, and was opened by the power owners through their own lands for their own uses in the development of their property, and not as a public street, and is first mentioned in conveyances of water power properties about the year 1836. In the partition deed of 1842, dividing among the several owners various parcels of water power property, including that now owned by the city of Ogdensburg, a clause appears declaring River street to be a street or way for the common use of the parties "(and of the public, when the public shall assume and maintain the same with the bridges)," but subject to all rights reserved of conducting water along and across the same, and other necessary uses in connection with the mill privileges.

In 1863, upon petitions requesting that River street be opened, the trustees of the village resolved that:

"Whenever River street westerly of Lake street shall have such part of the aqueduct removed as to make an easy grade, and the right of way surrendered, so that no expense is incurred by the village therefor, the board of trustees will establish the same as a public street."

In that year River street, west of Lake street, was surveyed by the village and declared to be a public highway; and in 1865 the village graded River street, built a bridge over the raceway, and required the property owners to build sidewalks along the street. By such action the power lot owners were relieved of the maintenance of River street, including the bridge over the raceway west of Lake street, and those obligations were assumed by the village. It thus appears that at this time the obligation to maintain the bridges over the canal on Lake and Main streets rested upon the property owners, and that the liability to maintain the bridge over the raceway on River street rested upon the village.

Prior to 1870 differences had arisen among the lot owners as to the nature and extent of their respective rights and interests in the water power and undivided property, and as to the nature and extent of their several obligations in respect of maintaining the dam, conduits, gates, and bridges, and other parts of the water power property, and it being

charged that some of the lot owners were using more water than they were entitled to take, and that other lot owners had neglected or refused to maintain conduits, or to contribute to the expense of making necessary repairs, or to otherwise observe the covenants in the conveyances under which they held title and possession, it was considered advisable that such rights, duties, and obligations of each property owner as towards the others should be judicially settled and defined, and a decree obtained under which each owner might be compelled to observe the covenants of his conveyance.

To this end the plaintiff Henry Rodee and others, in 1870, instituted an action in the Supreme Court, making the city of Ogdensburg and all persons and other corporations having water privileges parties defendant, setting forth in the complaint the facts as to the conveyances of water privileges, and as to the duties and obligations attendant thereon, and asking, among other things, a judicial construction of the several conveyances as to the rights of the several parties in the water power property, and asking the court—

"to define and determine the nature and extent of the obligations of the several parties to this action with respect to building, maintaining, and keeping in repair, and clear and unobstructed, the dams, * * * aqueducts, gates, bridges, and other parts of said water power property, and to provide for the strict enforcement of such obligations in said decree."

In 1872 said action was tried, and a judgment entered therein which, among other things, provided that the owners and occupants of water privileges upon said water power property were equally entitled to certain rights in common, among which was the right to use as a common way the streets and ways designated on the map of said property, among which were River, Lake, and Main streets, subject to the rights granted to parties interested to convey water in, along, and across the same, and to such other uses as should be necessary to the enjoyment of the rights and privileges granted or reserved as set forth in the judgment. The judgment also, among other things, provided that the owners and occupants of water privileges and premises owned by them, respectively, were subject to the common obligation to keep bridged the water races from the wheel pits wherever the same were crossed by streets or ways reserved; also that the owners and classes of owners of water privileges upon said water power property, and the premises and water privileges respectively owned or occupied by them, were subject to the following special obligations:

"Second. Upon such of the lots with which water power is granted in said partition deed, on which such water power shall be or shall have been in use, and upon the owners and occupants of such lots for the time being, the obligations to pay and contribute * * * towards the expenses of repairing and maintaining the dam across the river, * * * the canal and embankments on both sides of Main street, the canal across River street, * * * and the bridges over said canal, and over the waste races crossing Main street and over other waste races, if any, crossing streets except River street easterly of the lower pond when not chargeable upon particular premises as herein provided."

The portion of River street easterly of the lower pond was easterly of the bridge over the raceway. A referee was appointed to carry

each and every direction contained in the judgment into full effect, under the direction of the court, and was invested with all the powers necessary for that purpose. No appeal was taken from the judgment, which remains unmodified and in full force and effect, except that in August, 1879, the number of referees was increased from one to three.

[1, 2] It is upon this judgment that the city of Ogdensburg bases its sole claim of right to an order requiring the power property owners to repair and rebuild the bridges in question, and in its brief before us it says it does not seek to compel the erection by the property owners of bridges other than such as are required by the provisions of the judgment. The city having served a notice upon the referees and the property owners, stating that they were expected to at once place said bridges in repair and to rebuild the same, if necessary, which the referees and power owners refused to do, this application was made for an order requiring them to so do. The city claims that bridges constructed along either of the streets in question, in accordance with the judgment, must necessarily be fit for public use, while the property owners claim that the bridges required by the judgment to be built are simply such as are sufficient for the needs of the power property owners, which the court has found are supplied by the present bridges, although it was conceded upon the trial that the present bridges, for the purpose for which they are now being used, generally need repairs.

Mention was made of streets and bridges in several of the conveyances of water power property including and following the conveyance by Ford in 1828, and the trial judge in his elaborate opinion has collected the various references thereto as contained in the judgment roll, of which the conveyances form a part, and from them he concludes that, although there are references in the judgment roll which undoubtedly require the property owners to build certain bridges on streets crossing the property for the common benefit of the property owners, search must be made in vain for any provisions which even suggest that the property owners are to build bridges, and that it was not the intention of the property owners to obligate themselves for the construction of the bridges beyond what might be necessary for utilizing the water power property, and that the property owners had no intention of taking upon themselves the burden of maintaining the bridges which it was the duty of the public authorities to maintain for the public use.

It is contended by the respondent that there was no intention upon the part of the court, in granting the judgment of 1872, to impose upon the property owners any obligations other than those which existed under these conveyances, and that the court intended by the judgment merely to definitely define the rights and obligations of the parties and provide for their enforcement. However, the judgment in effect establishes that the title to the streets, the canal, and the imbankments remains in the water power owners, subject to the public use of the highways, and that the city of Ogdensburg owns the water power property used by it as its water power plant on the easterly side of the river just above the dam, as well as the land under the pond

to the center of the river, subject, however, to the rights of the property owners to the maintenance of the pond. The judgment fixed the rights of the power lot owners and the city, with reference to the streets, bridges, dam, pond, and the various rights and obligations of the parties with respect to the water power and the property connected therewith. It bound the city in all capacities, and fixed the rights and obligations of the parties with reference to the streets, canals, sluiceways, bridges, and appurtenances of the water power property. It also recognized certain land lying alongside the canal as the property of the lot owners, which might be used by them at will in widening the canal, both within and without the street boundaries.

The judgment in fact did more than simply define the rights of the city and the other power lot owners as expressed in the conveyances. It to an extent created new conditions, rights, and obligations. It omitted from the judgment the provision in the partition deed to the effect that River street should be for the common use of the public when the public should assume and maintain the same with the bridges, for the reason, doubtless, that between the time of the execution of the deed and the granting of the decree the village had accepted River street and assumed the obligation to maintain the bridge thereon. There is manifest in the decree the intention to set at rest by mutual agreement all questions as to the relative obligations of the city and the power owners as to the maintenance of the bridges, and to place the rights of the power owners on a liberal basis, which would encourage the development of the water power. The provisions of the decree outside of those contained in the conveyances are equally binding upon the parties to the action, all of whom were served with process, and a large proportion of whom appeared by attorneys upon the trial of the action. While search has failed to reveal any trace of the evidence which was introduced upon the trial, it must be assumed that a decree which has remained unappealed from, and has been acquiesced in by all the parties to the action for upwards of 40 years, was amply justified by the evidence.

[3] The respondents suggest that, the village and city having built and maintained the bridges over the canal on Lake and Main streets, and over the raceway on River street, for upwards of 60 years, more than 40 of which have elapsed since the entry of the decree, the city is estopped and cannot at this late day question its liability to continue to maintain these bridges. It appears from the evidence that from the time the limits of the village of Ogdensburg were extended, in 1851, to include the portion of the water power property situated on the westerly side of the river, known as Fordsville, down to the time of the incorporation of the city of Ogdensburg in 1868, and from that time to the present, these bridges have been built and maintained by the municipality. This the counsel for the city attributes to the fact that many of the officials of the village and city were the owners of water power property and lax in the enforcement of the obligations of such owners. Even if such were the fact, the prior voluntary maintenance of the bridges could impose no obligation whatever upon the city to continue the favor or furnish a basis for estoppel. It is a well-settled

principle that rights cannot be acquired by prescription as to a public highway against the public. Burbank et al. v. Fay et al., 65 N. Y. 57; Knickerbocker Ice Co. v. Shultz, 116 N. Y. 382, 22 N. E. 564; Fulton L. H. & P. Co. v. State, 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. (N. S.) 307.

[4] There is a further aspect in which the question as to the liability of the power owners to maintain a bridge over the raceway on River street should be considered, even if it be held that the power owners were vested with the obligation to maintain that bridge under the provision of the decree requiring them to maintain bridges "over other waste races, if any," crossing streets. As before stated, River street was opened by the power owners as a private street through their own property in the development of their power system. Its principal use was apparently by the power owners in connection with their business, and as furnishing convenient access to the railroad station. The travel on the street was not great, and required a not expensive bridge of ordinary width and capacity. The chief line of travel from Lake street to Morristown and other points along the St. Lawrence river remained through Main street, and, for aught that appeared, would so continue. Recently, however, through the action of the state and city, River street has been established as a state highway, and a pavement of brick and concrete is about to be laid along the street, requiring the construction over the raceway of an expensive bridge of sufficient capacity to carry the pavement and to bear the burdens of modern state highway traffic with the proper factor of safety. This change required in the character of the roadway and bridge was certainly not within the contemplation of the parties to the partition deed, or of the power owners and the municipality at the time River street was made a public highway, or at the time the decree was granted, and it would be inequitable and unjust to impose upon the power owners the burden of building and maintaining such a bridge, the necessity for the construction of which was in part brought about by the action of the city itself.

It is elementary that covenants are to be so construed as to carry into effect the intention of the parties, and it is well settled that equity will enforce specific performance only in accordance with the intent of the parties at the time the covenant was made. People v. N. Y. Cent. R. R., 168 N. Y. 194, 61 N. E. 172; Conger v. N. Y., W. S. & B. R. R., 120 N. Y. 29, 23 N. E. 983.

The question as to the liability of the power lot owners to maintain bridges over conduits at other places has not been considered, because of apparent immateriality and the meagerness of the record with reference to them. We conclude, however, that the power lot owners are obligated to maintain the bridges over the canal on Lake and Main streets, and the city to build and maintain the bridge over the raceway on River street.

The order of the Special Term should be modified accordingly, but without costs to either party in this or the lower court. All concur, except HOWARD, J., who dissents.