THE PEOPLE ex rel. OAK HILL CEMETERY ASSOCIATION, Respondent and Appellant, *v.* LUTHER A. PRATT et al., as Assessors, etc., Appellants and Respondents.

The lands of a cemetery association, organized under the act of 1847 (Chap. 133, Laws of 1847), by virtue of the provision thereof (§ 10), which declares that the cemetery lands and property of any association formed under the act shall be exempt from taxation, are exempt from the moment they are acquired by the association, and continue exempt so long as the corporation exists, although no dead body is buried therein, and although by a valid ordinance, passed after its incorporation by a municipality within whose limits its lands lie, the burial of the dead therein is forbidden.

Under the provisions of the charter of the city of Rochester (§ 40, chap. 14, Laws of 1880), giving to the common council power " to make, modify and repeal ordinances and by-laws to regulate the burial of the dead," that body has power to forbid by ordinance the burial of the dead in lands of a cemetery association within the city limits; and this, although at the time the association took the conveyance of its lands, it was lawful to use them for cemetery purposes.

Such an ordinance is a police regulation which the legislature may authorize the common council to pass.

The consent of said city is not essential to the incorporation of a cemetery association under said act, having for its objects the purchase of lands for the establishment of a cemetery within the city limits.

Nor is the assent of the supervisors of the county of Monroe necessary.

The various acts amendatory of said act of 1847 (Chap. 280, Laws of 1852; chap. 238, Laws of 1854; chap. 154, Laws of 1871, and chap. 389, Laws of 1889), which forbid the incorporation of such associations in certain counties named, without the assent of their respective boards of supervisors, apply only to the counties named.

The exemption from taxation given by said act of 1847, is not affected by the amendment thereto of 1869 (Chap. 708, Laws of 1869).

Nor is such exemption affected by the act of 1879, in relation to lands used for cemetery purposes (Chap. 310, Laws of 1879); that act relates to cemeteries other than those established under the act of 1847.

Accordingly, *held*, where a cemetery association, incorporated under said act of 1847, had purchased lands for cemetery purposes within the limits of said city, and under the city ordinances then existing, the burial of the dead therein was permitted, but thereafter an ordinance was passed prohibiting such burial, that although the ordinance was valid and no burials could be made in said lands while it remained in force, an assessment of said lands for the purposes of taxation was illegal.

*It seems*, in case the association fails to procure a repeal of the ordinance, it may apply for a voluntary dissolution, and upon dissolution dispose of its lands in the manner provided for in such case, or in case it shall refuse to make the application, the attorney-general may, after it has suspended its lawful business for a year, institute an action in behalf of the people for its dissolution.

(Argued October 19, 1891; decided December 1, 1891.)

Appeal from order of the General Term of the Supreme Court in the fifth judicial department, made on the first Tuesday of June, 1891, which affirmed an order of Special Term denying an application of the relator to review a determination of the assessors of the city of Rochester.

The facts, so far as material, are stated in the opinion.

*Martin W. Cook* and *H. F. Remington* for appellant. The court erred in deciding that the lands in question were not exempt from taxation. (Laws of 1887, chap. 133, § 10.) The legal conclusions of the court below evidently were based

upon the finding of fact in respect of advertising and procuring the consent of the board of supervisors; such finding was not only unsupported by any evidence but it would be immaterial if it were established. (Laws of 1852, chap. 280, § 4.) The city of Rochester has no more power to interfere with the acquisition of the title to lands, or to the devotion of them to the purposes provided by the act of 1847, than any other corporation. (Laws of 1880, chap. 14, § 40.)

*George F. Danforth* for respondents. The burden is upon the relator to show some ground for the exemption. (Laws of 1847, chap. 133, §§ 1, 4, 5, 6; Laws of 1869, chap. 708; Laws of 1879, chap. 310, § 2.) The act of 1847 has no proper application to an' urban or city cemetery. (Laws of 1852, chap. 280; Laws of 1854, chap. 238; Laws of 1871, chap. 164.) The whole matter was under the control of the common council of the city. (Laws of 1830, chap. 14, § 40; Laws of 1834, chap. 199, §§ 8, 18, 46; *Church* v. *Mayor, etc.,* 5 Cow. 538; *Coales* v. *Mayor, etc.,* 7 id. 585; Laws of 1813, chap. 86.)

*C. D. Kiehel* for respondents. The property in question is not exempt from taxation. (Laws of 1880, chap. 14, § 40; *People* v. *Roper,* 35 N. Y. 632, 635, 638; *People* v. *Board of Assessors,* 84 id. 610; *Cronin* v. *People,* 82 id. 318; *Coates* v. *Mayor,* 7 Cow. 585; *Berholf* v. *O'Reilly,* 74 N. Y. 522; Dillon on Mun. Corp. [4th ed.] § 142.) No consent to burial in the premises in question can be implied from the ordinance of March 19, 1889, or from the omission of the property from the assessment-rolls for the year 1889 by the assessors. (Laws of 1865, chap. 456; *Overing* v. *Foote,* 43 N. Y. 290; *People ex. rel.* v. *Assessors of Brooklyn,* 92 id. 430.) It was error to allow the witnesses of the relator to give their opinions of the comparative values of the properties of Smith, Stanley, Corser, and Ellwanger & Barry, near or adjacent to the property in question. (*People* v. *Warren,* 47 Hun, 448; 109 N. Y. 576; *People ex. rel.* v. *Carter,* 109 id. 576; *People ex. rel* v. *Christie,* 115 id. 158.) The assessors complied with the laws of this state, in

completing and delivering the assessment-rolls. (Laws of 1880, chap. 14, § 83; Laws of 1890, chap. 561; *People* v. *Quigg,* 59 N. Y. 83; *People ex. rel.* v. *Palmer,* 52 id. 83; *Hawkins* v. *Mayer,* 64 id. 18; *Weiler* v. *Neubach,* 114 id. 36.)

EARL, J. The relator, The Oak Hill Cemetery Association, complains that its land, situated in the city of Rochester, was illegally assessed in the year 1890, and it has instituted this proceeding to procure the assessment to be stricken from the assessment-roll as illegal and unauthorized. It was incorporated under the act, chapter 133 of the Laws of 1847, on the 16th day of March, 1889. At that time there was an ordinance of the city of Rochester passed in 1887, prohibiting the burial of dead human bodies within the city limits, except in certain cemeteries specified. On the 19th day of March, 1889, that ordinance was amended so as to authorize the burial of the dead in the relator's cemetery, and thereafter, and while that ordinance was in force, it took a conveyance of fifty-four and one-half acres of land situated within the city limits. On the 2d day of May, 1889, the ordinance was again amended so as to prohibit the burial of the dead in any cemetery within the city limits, except in certain cemeteries named, among which was not the relator's, and thus thereafter, assuming the validity of the ordinance, no burials could be made in the cemetery.

We must assume that no body has been buried in this cemetery, and the important question for us to determine is whether the relator's land, under the act of 1847 is exempt from taxation, although, so long as the ordinance remains in force as at present framed, no burials can be made therein.

We have no doubt that the relator was properly incorporated. It was not obliged to obtain the consent of the city of Rochester to its incorporation, nor, as has been contended on the part of the defendants, was it obliged to obtain the consent of the supervisors of the county of Monroe. The acts, chapter 280 of the Laws of 1852, chapter 238 of the Laws of 1854, chapter 164 of the Laws of 1871, and chapter 389 of the Laws of 1889, to which our attention has been called, do not relate

to cemeteries in the county of Monroe, and relate only to the counties mentioned in those acts.

We have no doubt that the common council had power to pass the ordinance prohibiting the burial of the dead in this cemetery. Under the charter of the city (Laws of 1880, chap. 14, § 40), it is provided that the common council shall have power to "make, modify and repeal such ordinances, by-laws and regulations as it shall deem reasonable within the said city for the following purposes;" and among the purposes specified is "to regulate the burial of the dead." Under the power to regulate, the common council could prohibit the burial of the dead within the city limits. (*Cronin* v. *People,* 82 N. Y. 318.)

This ordinance is a police regulation which the legislature could authorize the common council to pass. (*Brick Church* v. *Mayor, etc.,* 5 Cow. 538; *Coates* v. *Mayor, etc.,* 7 id. 583; *Matter of Ryers,* 72 N. Y. 1.)

It is immaterial that at the time the relator took the conveyance of its land it was lawful to use it for cemetery purposes and to bury the dead therein. The power possessed by the common council to regulate the burial of the dead is a continuing power, and it may be exercised in its discretion from time to time as the public health and welfare may require. So, we have no doubt that so long as the ordinance remains in force no dead body can be buried in this cemetery, and yet we reach the conclusion that its land cannot be taxed under the law of 1847. Section 1 of that act provides that any number of persons residing in this state, not less than seven, who shall desire to form an association for the purpose " of procuring and holding lands to be used exclusively for a cemetery, or place for the burial of the dead," may form a corporation as provided in that and the two following sections. Section 4 provides that any association incorporated under the act may take by purchase or devise, and hold within the county in which the certificate of its incorporation is recorded, not exceeding two hundred acres of land, to be held and occupied exclusively as a cemetery for the burial of the dead, and further provides that " such land, or such parts thereof as may

from time to time be required for that purpose, shall be surveyed and subdivided into lots or plots of such size as the trustees may direct, with such avenues, paths, alleys and walks as the trustees deem proper; and a map or maps of such surveys shall be filed in the clerk's office of the county in which the land shall be situated." These surveys and subdivisions and maps thus authorized may be made from time to time, and all this is to be done before cemetery lots can be sold, and the lots are to be sold according to these surveys and maps. The section also provides that any association incorporated under the act may hold personal property, not to exceed $5,000, besides what may arise from the sale of lots. Section 7, as amended by the act, chapter 108 of the Laws of 1879, provides that, " All lots or plots of ground designated on the maps filed as aforesaid, and numbered as separate lots by the corporation, shall be indivisible, but may be held and owned in undivided shares. * * * One-half, at least, of the proceeds of all sales of lots or plots shall be first appropriated to the payment of the purchase-money of the lands acquired by the association, until the whole purchase-money shall be paid and the residue thereof to preserving, improving and embellishing the said cemetery grounds and the avenues or roads leading thereto, and to defraying the incidental expenses of the cemetery establishment. And after the payment of the purchase-money, and the debts contracted therefor, and for surveying and laying out the land, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery, and for incidental expenses, and to no other purpose or object unless expressly authorized by law," etc. Section 10 provides that " the cemetery lands and property of any association, formed pursuant to this act, shall be exempt from all public taxes, rates and assessments, and shall not be liable to be sold on execution, or be applied in payment of debts due from any individual proprietor." Section 11 provides that " whenever the said land shall be laid off into lots or plots, or any of them shall be transferred to individual holders, and after there shall have been an inter-

ment in a lot or plot so transferred, such lot or plot, from the time of such first interment, shall forever thereafter be inalienable, and shall, upon the death of the holder or proprietor thereof, descend to the heirs at law of such holder or proprietor and to their heirs at law forever."

It is thus seen, by this brief review of the provisions of the act, that the land of the relator is held exclusively for cemetery purposes, and that it cannot be devoted to or used for any other purpose. It has no power to sell any of its land except to persons who desire it for burial purposes, and all of its land, the moment it acquires it, and before a dead body is buried therein, is absolutely exempt from all taxation. The cemetery land of such a corporation, not only, but all its property, is thus exempt. So long as Oak Hill cemetery exists as a corporation, it must hold its property exclusively for cemetery purposes, and while burials cannot now be made therein, the ordinance prohibiting them may be repealed or modified at any time so as to allow them. There is no provision in the statute that its land shall be exempt from taxation only so long as burials are authorized to be made therein. The exemption is absolute.

There is nothing in the act, chapter 708 of the Laws of 1869 or chapter 310 of the Laws of 1879, which affects the exemption from taxation conferred by section 10 of the act of 1847. By the act of 1869, section 10 is amended only in reference to the rights of individual proprietors of lots, and it in no way changes the exemption of the corporation from taxation as provided in section 10 of the act of 1847. The act of 1879, is not an amendment of the act of 1847, and does not relate to cemeteries owned by corporations organized under that act. It relates to other cemeteries not established under that act. This fully appears from section 2, which is as follows : " Whenever any such land shall cease to be used for cemetery purposes, any judgment, tax or assessment which, but for the provisions of this act, would have been levied, collected or imposed, shall thereupon forthwith, together with interest thereon, become and be a lien, and charge upon such land, and collectible out

of the same." That section plainly has no reference to a corporation organized under the act of 1847, for the reason that independently of the act of 1879, no tax could be levied upon the lands of such a corporation, the exemption from taxation being due to the act of 1847, and not to that of 1879. The purpose of that act was to secure to cemeteries not established under the act of 1847, exemption from taxation and other immunities which they did not before possess.

It cannot be well contended that the cemetery land exempted from taxation under the act of 1847, is only such portions of the land purchased for cemetery purposes as are surveyed, mapped and laid out into lots under section 4. The purpose of those provisions is the convenience of sale, the security of titles, and the benefit and protection of lot owners. We have no reason to suppose, from any language used in the act, that it was the intention of the legislature that any portion of the cemetery land not laid out into lots, but which must, nevertheless, be held exclusively for cemetery purposes, should be subject to taxation.

The question may be asked, what is to become of the land of this corporation if it cannot be used under the ordinance of the city for cemetery purposes, and if the corporation cannot devote it to any other purpose? The answer is, that unless the corporation can secure a repeal of the ordinance, it can do none of the business for which it is organized, and it may apply for a voluntary dissolution and then dispose of its land in the mode provided in the case of the dissolution of corporations. In case it should refuse to take proceedings for a voluntary dissolution, the attorney-general, in behalf of the people, may, after it has suspended its ordinary and lawful business for a year, institute an action for its dissolution. And, in any event, the legislature may provide by an amendment of the act of 1847, for the taxation of cemetery lands thus situated. Until the legislature shall take action in that direction, we must follow the plain language of the statute as it now is. The common council of the city cannot take away from this corporation its, exemption from taxation by simply prohibiting the burial of

the dead in its land.    All its land and property are exempt from taxation, and we must give force and effect to the statute.

The orders of the General and Special Terms should be reversed, and the assessment upon the relator's property ordered to be vacated and stricken from the assessment-roll, with costs to the appellant in all the courts.

All concur.

Orders reversed.