## PEOPLE v. CAMPBELL et al.

(Supreme Court, General Term, Third Department. July 6, 1895.)

1. TAXATION—REVIEW OF ASSESSMENT—VERIFYING PETITION.
   Where a petition under Laws 1889, c. 463, § 19, for revision of franchise tax, is signed, and the person signing is mentioned in the affidavit of verification, such affidavit need not be signed by him.

2. SAME—RECITALS OF AFFIDAVIT.
   Such affidavit is sufficient, though affiant only states the facts to be true "to the best of his knowledge and belief."

3. SAME—EVIDENCE TO JUSTIFY REVISION.
   A petition is sufficient, as evidence to justify revision by the comptroller of a corporation's franchise tax, where it states that the figures therein appearing were obtained from the corporation's books, and that petitioner believes them true, and the affidavit states that the facts set forth in the petition are correct and true.

4. SAME—PROPERTY EMPLOYED OUT OF STATE.
   The capital stock of a railroad company invested in cars permanently engaged out of the state is not subject to the franchise tax.

5. SAME—INVESTMENTS IN STOCK OF FOREIGN CORPORATION.
   The capital stock of a corporation invested in stock of foreign corporations is not capital stock used in the state.

6. SAME—INVESTMENTS IN BONDS OF FOREIGN CORPORATIONS.
   Bonds of foreign corporations held by a corporation are not part of its capital stock employed out of the state.

Certiorari on the petition of the attorney general to review the proceedings had before Frank Campbell, as late comptroller of the state of New York, and James A. Roberts, comptroller of the state of New York, relating to the revision and readjustment of taxes assessed against the New York Central & Hudson River Railroad Company.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

T. E. Hancock, Atty. Gen. (G. D. B. Hasbrouck, Dep. Atty. Gen., of counsel), for the People.

Parker & Fiero (J. Newton Fiero, of counsel), for Frank Campbell, late comptroller.

Nathaniel W. Norton, for Comptroller James A. Roberts.

PUTNAM, J. The New York Central & Hudson River Railroad Company for the years 1885–91 made the annual report required by chapter 542, Laws 1880, and the several acts amendatory and supplementary thereto, and paid the tax required by said statute on its franchise or business. It will be seen by an examination of its reports contained in the case, on which the annual franchise tax was computed, that it failed to state in either the amount of its capital stock employed within the state, as required by chapter 151, Laws 1882, as amended by chapter 501, Laws 1885. The comptroller therefore assessed the corporation, for each year above mentioned, upon its full capital stock, and the tax by him assessed was duly paid. On or about November 29, 1893, in pursuance of the provisions of chapter 463 of the Laws of 1889 (section 19) the said corporation applied to the comptroller for a revision or readjustment

of said franchise tax so assessed for each of the years above mentioned. The application was made by a petition or communication to the comptroller purporting to be made by the New York Central & Hudson River Railroad Company and signed by J. Carstensen, its comptroller. The verification to said communication was not signed by said Carstensen, and was as follows:

"State of New York, City and County of New York, ss.

"John Carstensen, being duly sworn, and being duly known to me as the comptroller of the New York Central & Hudson River Railroad, states that he is the said comptroller, and that the facts set forth in the foregoing statement are correct and true, to the best of his knowledge and belief.

"[L. S.]                     D. W. Pardee, Notary Public, Kings County.

"Cert. filed in New York county Nov. 28, 1893."

The application for a revision was heard and granted. The comptroller allowed the railroad company the following credit upon its tax for the years above mentioned: 1885, $10,749.93; 1886, $12,455.71; 1887, $13,179.81; 1888, $13,430.60; 1889, $12,381.06; 1890, $12,735.13; 1891, $12,795.24,—a total of $87,727.48. The matter comes before this court upon a certiorari issued pursuant to the provisions of section 20, chapter 463, of the Laws of 1889. The learned attorney general urges 'that the statement of the railroad company used before the comptroller on the revision was not properly verified, and was not evidence of the facts therein stated, and that the comptroller had no sufficient proof before him to justify the correction of taxes which had been duly assessed and paid; also that no notice of the application for the revision was served upon the attorney general according to the previous practice of the comptroller's office; also that certain bonds owned by the corporation during the years in question were illegally held by the comptroller to be a part of its capital stock employed out of the state.

As to the objection that the petition for the revision signed by J Carstensen, the comptroller of the railroad, was not properly verified, we are of the opinion that Mr. Carstensen having signed the petition, and being named in the affidavit of verification, it was not necessary for him to sign the latter. Haff v. Spicer, 3 Caines, 190; Jackson v. Virgil, 3 Johns. 540. Nor was the effect of the affidavit of verification impaired because of the words "to the best of his knowledge and belief," at the end thereof. Pratt v. Stevens, 94 N. Y. 387.

By the petition of the railroad company signed by Carstensen it appears that he had examined the records kept by the company, and that during the years in question, as shown by the said records, a certain amount of the capital stock of the railroad company was employed out of the state. It is claimed by the appellant that there was no proof before the comptroller that the books and records of the railroad company were correct, and hence there was no competent evidence before him to justify the revision. As we understand the petition and affidavit, Mr. Carstensen states in the petition that he had obtained the figures appearing in his statement from the records and books, and believes them correct, and in the affidavit

says that the facts set forth in the petition are correct and true. We think that in such a case the papers were sufficient to authorize the determination of the comptroller.

In reviewing a decision of the comptroller under the provisions of the act of 1889 we are not governed by the same rules as are applicable on an appeal from a judgment entered in an ordinary action of law. The strict rules of evidence applied in actions do not govern on a proceeding before the comptroller. He may receive affidavits as evidence. People v. Pratt, 129 N. Y. 68, 29 N. E. 7. The comptroller is in fact an assessor, and may determine the matter submitted to him upon evidence which would not be deemed admissible in a common-law action. People v. Wemple, 138 N. Y. 582, 583, 34 N. E. 386.

On the application for a revision, the railroad company submitted a statement taken from its records as evidence. As said in People v. Pratt, 129 N. Y., at page 71, 29 N. E. 7, the case shows that the comptroller received the petition as evidence of the facts therein set forth, and it does not appear that any one objected to it as not competent. The comptroller might have required further proof, but he was satisfied that the statement taken from the books of the company showed the actual amount of its capital stock employed out of the state. In his return he says:

"The New York Central & Hudson River Railroad Company submitted evidence to the comptroller which showed the employment of a portion of its capital stock out of the state, and how much thereof was so employed, and the comptroller thereupon resettled the accounts of such company so as to confine the tax to the capital stock employed within the state of New York, as required by law. * * * The evidence submitted satisfied him of the truth of the facts alleged, and warranted him in entering the order correcting the error in the accounts as theretofore settled."

We suppose, as a matter of fact, that the reports made to the comptroller by corporations in pursuance of the act of 1880 are usually drawn from their books and records. It is difficult to see how otherwise corporations could make a report required by the act. Had this railroad company, in making its annual reports for the years, given the amount of capital stock employed out of the state, and so stated, from statistics contained in its books and records, the comptroller undoubtedly would have been authorized to deduct the amount of capital stock so said to be employed out of the state from information derived from the books of the company. We see no reason to doubt that, on the motion for a revision of an assessment on account of a mistake as to the amount of capital stock employed in the state, the comptroller may also rely upon information derived from the books of the company. We are of opinion that the comptroller may usually determine for himself what evidence he requires of the facts, on the motion for a revision; that it was competent for him to rely upon the books and records of the company showing the amount of its property employed out of the state, and that this court cannot properly reverse the finding of the comptroller on the ground that it was based on such evidence.

The objection is also taken to the revision made by the comptroller on the ground that no notice of the application for a revision was given to the attorney general, according to the usual practice. It is sufficient to say, in answer to this position, that the return in the case of Comptroller Campbell contraverts the affidavit of Charles E. Kilmer in regard to the existence of any such practice in cases of revision, when the application therefor is made subsequent to the payment of the tax. The statement from the records of the New York Central & Hudson River Railroad Company which the comptroller received in evidence, and which we think he had, in his discretion, a right to regard, as to the amount of the capital stock of the company employed out of the state during the years in question, showed that during each of said years a large number of freight cars were permanently occupied out of the state, and that the company also had a portion of its capital stock invested in the stock of foreign corporations, and also in corporate bonds. It does not require a discussion or citation of authorities to show that such part of the capital stock of the railroad company as was invested in freight cars permanently engaged out of the state was not subject to the franchise tax, under the provisions of chapter 542, Laws 1880, and the acts amendatory and supplementary thereto. Pullman Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876; Com. v. Delaware, L. & W. R. Co., 145 Pa. St. 96, 22 Atl. 157. It is equally clear that the stock of foreign corporations in which a portion of the capital stock of the company 'was invested was not capital stock used in the state. People v. Campbell, 138 N. Y. 543, 546, 34 N. E. 370. We therefore think that the comptroller was justified in making the revision he did of the tax assessed against the railroad company, as far as it was assessed on that portion of the capital stock of the corporation invested in freight cars permanently engaged out of the state and in the stock of foreign corporations.

We however are unable to agree with the comptroller that the bonds of foreign corporations held by the New York Central & Hudson River Railroad Company were a part of its capital stock employed out of the state. The amount allowed by the comptroller on account of such bonds during the years in questions is stated to be $13,560.15. Nothing appears in the case to show that those bonds were employed out of the state. In People v. Campbell, 138 N. Y., at page 547, 34 N. E. 370, is said, a similar question arising in that case to the one under consideration: "Those bonds were presumably held at its office in this state, and such bonds, as well as all choses in action, unless kept, employed, or used outside of the state, have their situs at the domicile of the owner." It is suggested by the learned counsel for the respondent that the clause in the opinion of Earl, J., above quoted, was obiter. We think, however, that the opinion of the eminent judge who delivered the opinion of the court of appeals in the case cited may be considered an authority, and properly followed, although not absolutely necessary in the decision of the case in which it was written.

Our conclusion therefore is that the allowance made to the New

York Central & Hudson River Railroad Company on the revision should be corrected, by deducting therefrom the amount allowed on account of capital stock invested in the bonds of foreign corporations during the years in question, and as so modified the decision of the comptroller should be confirmed without costs to either party.    All concur.