MORTON et al. v. ST. PATRICK'S ROMAN CATHOLIC CHURCH
SOCIETY OF SALAMANCA.

(Supreme Court, Equity Term, Cattaraugus County. June 4, 1906.)

**1. PARTIES—WAIVER OF OBJECTIONS.**

Under Code Civ. Proc. § 499, providing that defendant waives objection that plaintiff had not legal capacity to sue, unless raised by answer or demurrer, failure to so raise objection that the board of health of a town has not legal capacity to sue except in the name of town waives it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, § 177.]

**2. CEMETERIES—POWER TO LOCATE—STATUTORY PROVISIONS.**

The general power conferred by Laws 1895, p. 481, c. 723, § 7, on religious corporations, to take and hold real property for cemetery purposes, is subject to the exercise of the police power, including the powers of town boards of health.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Cemeteries, § 11.]

**3. HEALTH—POWER TO MAKE REGULATIONS.**

The Public Health Law, Laws 1893, p. 1502, c. 661, § 21, providing that a local board of health shall make orders and regulations concerning matters in its judgment detrimental to public health, will not support an

order of such a board that the use of certain lands for a cemetery would be detrimental to public health and was therefore prohibited, unless such prohibition was necessary for preservation of the public health.

4. SAME—NUISANCES—INJUNCTION—EVIDENCE.

Evidence in a suit to restrain the use of land in a town for a cemetery *held* not to authorize a finding that such use is, or within a long time will become, dangerous to public health, so as to warrant an order of the town board of health prohibiting the use.

Action by William S. Morton and others, as the board of health of the town of Great Valley, county of Cattaraugus, against the St. Patrick's Roman Catholic Church Society of Salamanca, to restrain defendant from using certain real estate in Great Valley for cemetery purposes. Judgment for defendant.

Carey D. Davie and W. K. Harrison, for plaintiffs.

Thos. M. Dowd, Jas. P. Quigley, and Wm. R. Laidlaw, for defendant.

POUND, J. The objection that the board of health of the town of Great Valley has not legal capacity to sue, except in the name of the town (Board of Health v. Magill, 17 App. Div. 249, 45 N. Y. Supp. 710), has been waived by failure to raise the same by answer or demurrer (Code Civ. Proc. § 499).

The general power conferred by the religious corporations law upon religious corporations to take and hold real property for cemetery purposes (Laws 1895, p. 481, c. 723, § 7), does not vest in such corporations the power to locate and maintain at will their cemeteries in towns, but confers such power subject to the exercise of the police power of the state, as corporations generally exercise their enumerated powers subject to such police power, including the legitimate exercise of the powers of boards of health in towns (Eagle Ins. Co. v. Ohio, 153 U. S. 446, 14 Sup Ct. 868, 38 L. Ed. 778; People ex rel. Oak Hill Cemetery Ass'n v. Pratt, 129 N. Y. 68, 29 N. E. 7). The health laws and the cemetery laws do not conflict. The power to acquire lands for cemetery purposes legalizes the establishment by religious corporations of cemeteries in towns. Such cemeteries are not nuisances per se, but may be or become nuisances in fact (6 Cyc. 713, and cases cited), and as such they are subject to injunctive action by local boards of health. The question whether the board of health had power to make the general order of September 6, 1902, that no cemetery or burial ground should be established within the limits of the town without the consent of the said board, is not necessarily involved in the decision of this case. The public health law (section 21, c. 661, p. 1502, Laws 1893) provides that a local board of health "shall make * * * orders and regulations for the suppression of nuisances and concerning all other matters in its judgment detrimental to the public health in special or individual cases."

The question is whether the resolution or order of July 25, 1905, of the board of health of the town of Great Valley, to the effect that the use of defendant's lands or any part thereof for cemetery purposes would be detrimental to public health and is therefore prohibited, is sustained by the evidence in the case. Was said board justified in making such order? Its determination is not final nor conclusive upon

defendant, nor had it power to make the same unless the prohibition of the use of said lands for cemetery purposes was necessary and proper for the preservation of public health. People ex rel. Copcutt v. Board of Health, 140 N. Y. 1, 35 N. E. 320, 23 L. R. A. 481, 37 Am. St. Rep. 522. The burden in this action is upon the plaintiffs to establish that the use of the defendant's property for burial purposes is or will become in some way dangerous or destructive to public health. Defendant's cemetery lands in suit are nearly five acres in area. Only two dead bodies are now interred therein. The village of Salamanca, having a population of about 6,000 inhabitants, has for its eastern boundary the town of Great Valley, and the cemetery is located in said town, not far from the village line. The immediate vicinity is sparsely settled and consists largely of forest and farming land. The rear boundary of the cemetery tract is the cut for the tracks of the Erie Railroad, and across said cut is Woodlawn Cemetery. On a tract of some 400 or 500 acres of land immediately about the cemetery were only about six houses when this action was begun. The nearest house to the cemetery is over 100 feet from the cemetery line. In the ordinary course of nature, the number of burials would for the present vary from 25 to 35 per annum. The old cemetery of the defendant is in the same town in an equally settled neighborhood, and is now fully occupied with graves, but no bad effects to health have been satisfactorily traced to such cemetery.

It would seem that the only consequences of an evil nature that can be anticipated from the use of defendant's land for cemetery purposes are the remote possibility of the contamination of wells in its vicinity which are already endangered by the close proximity of privies, and of the distribution of disease germs by the air   These dangers are too slight and uncertain to be the basis of injunctive relief. So long as inhumation, or the consigning of the body to the earth, remains the custom of civilized peoples in disposing of their dead, some remote danger of air and water contamination will arise from the proximity of cemeteries to places of human abode. Doubtless safety dictates that they should be as remote as convenience will permit. That such danger from new rural cemeteries in sparsely settled regions is more speculative than real is demonstrated by common knowledge, medical, and sanitary science and legislative policy. It was conceded upon the trial that the Roman Catholic Church teaches as a religious doctrine that the disposal of dead bodies by cremation is not sanctioned, and is sinful. Cemeteries must be provided in practicable locations for many years to come to satisfy the wants of our people until the practice of incineration or burning of dead bodies, however preferable on sanitary grounds it may be, meets with more general favor than it has as yet won.

The evidence satisfies me that the properly regulated use by the defendant of the lands in suit for burial purposes will not for a long time, if ever, become an appreciable menace to the health of the neighborhood by corrupting either air or water.

Judgment for defendant, with costs. Prepare decision accordingly.