Matter of GEORGE W. CHAUNCEY, as Receiver in Sequestration of PINELAWN CEMETERY.

(Supreme Court, Kings Special Term, March, 1919.)

Cemetery associations — consolidation of — cemetery corporations cannot hold more than 200 acres of land for cemetery purposes — statutes — rights of land purchase certificate holders — when improper to devote mortgaged lands to cemetery purposes — Membership Corporations Law, §§ 65, 70 — Real Property Law, § 450, as amended by Laws of 1918, chap. 404.

A cemetery corporation cannot be permitted to hold for cemetery purposes more than 200 acres of land, which must be in one tract, and the statutory provisions relating to the consolidation of membership corporations must be read in connection with the statute limiting the extent of cemeteries, and both statutes construed together.

As the statute (Membership Corporations Law of 1895, § 45, continued as § 65 of the Membership Corporations Law of 1909) in effect forbade a cemetery corporation to acquire more than 200 acres of land for cemetery purposes, the consolida-

tion in 1902, of a number of such corporations, into one, which nominally became vested with the title to a tract of land consisting of some 1,800 or 2,000 acres set aside for cemetery purposes, was an evasion of the statute and its continuance cannot be permitted; though the merger corporation acquired the legal title to said lands, all in excess of the statutory limit, except perhaps the lands in which burials have actually been made, are subject to sale under an execution or by a receiver.

Land certificates issued pursuant to statute (Membership Corporations Law of 1895, § 54, now Membership Corporations Law of 1909, § 74) by the separate corporations which affected the consolidation, for the purchase price of lands, were exchanged for certificates issued by the merger corporation. *Held,* that section 50 of the Membership Corporations Law of 1895, now section 70 of the Membership Corporations Law of 1909, pursuant to which one-half of the proceeds of the sales of the use of plots and lots was to be devoted to the redemption of the original certificates, which in terms similarly provided, must be read in connection with section 450 of the Real Property Law, which as amended by chapter 404 of the Laws of 1918 declares: "No land actually used and occupied for cemetery purposes shall be sold under execution * * * nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for such cemetery purposes except cemetery lands in which interments have not been made may be sold under execution to satisfy a valid judgment of a court of record."

The holders of the land purchase certificates had no such vested right in all lands belonging to the merger corporation whereby they could insist that such lands should be disposed of only by granting the use of lots and plots for burial purposes, one-half of the proceeds being paid to the certificate holders, and they may not successfully urge that the amendatory act of 1918 is an unconstitutional invasion of vested rights.

While the rights of the land purchase certificate holders to one-half of the proceeds of the sale of the use of lots and plots for burial purposes, cannot be taken away, their interest was not in the land as such, and their rights do not preclude the sale, for other purposes, of lands not sold or used for

Supreme Court, March, 1919.    [Vol. 106.

burial purposes, and for this reason no vested right was taken away by the statute of 1918.

The remedy given by the said amendatory act of 1918 may be availed of by the owner of a judgment recovered prior to the enactment of said statute.

It is highly improper, if not actually fraudulent, to devote mortgaged lands to cemetery purposes, since the foreclosure of the mortgage might result in a desecration after burials.

MOTION to direct receiver of cemetery association to sell lands.

Gardner, Tyndall & Barton (John M. Gardner, of counsel), for William D. Tyndall, in support of motion.

Cullen & Dykman (William N. Dykman, of counsel), for George W. Chauncey, as receiver.

L. J. Morrison, for Pinelawn Cemetery, in opposition.

Hillquit & Levene, for Eleanor C. Hughes, in opposition.

Earnest R. Eckley, for Lillian M. Locke, in opposition.

Wilson, Barker & Wager (Harris Wilson, of counsel), for Abram C. De Graw, in opposition.

Edward J. Connolly, for Malcolm B. Dutcher and DeWitt C. Dutcher, as executors of the will of Silas B. Dutcher, deceased, in opposition.

Richmond J. Reese, *amicus curiae*, in opposition.

BENEDICT, J. Application was made to the court by William D. Tyndall on December 30, 1918, for an order

directing the sale of so much of the lands of Pinelawn Cemetery in the county of Suffolk, not sold or used for burial purposes, as might be required to raise moneys sufficient to satisfy a judgment against said cemetery corporation in favor of William D. Tyndall and others, and also directing the receiver to dispose of all the assets of the cemetery corporation and wind up the receivership. I granted the motion for the relief above specified, although not as to certain other relief asked for; but no order has been signed, because on publication of the decision application was made on behalf of the cemetery corporation for leave to come into the proceeding and to oppose so much of the application as seeks the sale of any of the lands belonging to the corporation. This motion was referred to me, and on the hearing various other interested parties sought to intervene and have submitted affidavits and memoranda, and I have fully reheard and reconsidered the matter.

At the outset, I may say that the applications of all persons claiming to be interested in this proceeding, or in the lands proposed to be sold, to intervene herein are granted, and the affidavits submitted by them will be filed with the order to be entered.

A proper consideration of the motion requires a brief review of the history of the Pinelawn Cemetery. The facts are very imperfectly presented on this motion, but from the papers submitted I have been able to deduce the following: In 1901 William H. Locke, Jr., and other persons purchased a tract of unimproved land in Suffolk county, L. I., which they conveyed in separate parcels to eleven separate cemetery corporations. On October 25, 1902, upon the petition of these corporations an order was made under section 7 of the Membership Corporations Law of 1895 consolidating them into one corporation under

Supreme Court, March, 1919. [Vol. 106.

the name "Pinelawn Cemetery." Thus there became vested in this derivative corporation, nominally at least, a tract of land set aside for cemetery purposes of some 1,800 to 2,000 acres in extent. This procedure of forming eleven corporations to take over in the first place parts of this tract of land, making eleven contiguous but separate cemeteries, and then consolidating them into one, was patently adopted for the purpose of evading the statute then in force (Membership Corp. Law of 1895, § 45, continued in Membership Corp. Law of 1909, § 65), which in effect forbade a cemetery corporation to acquire for cemetery purposes more than 200 acres of land in the aggregate.

Land purchase certificates were issued by the eleven corporations for the purchase price of the lands, pursuant to section 54 of the then existing Membership Corporations Law (see Membership Corp. Law of 1909, § 74), and on the consolidation these certificates were exchanged for the certificates issued by the consolidated corporation to the amount of 127,850 shares. It was stated on the argument furthermore and not disputed that these lands, or some part thereof, were conveyed to the cemetery corporations subject to mortgages. By the terms of these land purchase certificates and pursuant to statute (Membership Corp. Law of 1895, § 50. See Membership Corp. Law of 1909, § 70), one-half of the proceeds of the sales of the use of plots and lots was to be devoted to the redemption of the certificates. Also a schedule of prices was fixed, which, by the provisions of the last mentioned section, is not to be changed while the purchase price of the land remains unpaid.

In connection with these sections should be read section 450 of the Real Property Law, which, as in force prior to the enactment of chapter 404 of the Laws of 1918, provided that, " No land actually used

and occupied for cemetery purposes shall be sold under execution * * * nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for such cemetery purposes." The act of 1918, aforesaid, amended this section by adding, after the provision quoted, the words " except cemetery lands in which interments have not been made may be sold under execution to satisfy a valid judgment of a court of record."

The business of Pinelawn Cemetery seems, judging from the results, to have been mismanaged. As yet only a small part of the tract, not exceeding 250 acres, has been actually improved, sold or used for burial purposes. Heavy debts were incurred and not paid, and certificates of indebtedness were issued. It appears that a large part of the one-half of the proceeds of the sales of the use of the plots and lots which should have been applied to the redemption of the land purchase certificates was not so applied.

On June 18, 1915, William D. Tyndall, the holder of certain of these certificates, in an action for an accounting on behalf of himself and others similarly situated, and after such accounting, recovered a final judgment against Pinelawn Cemetery for $10,737.51. Also one Eleanor C. Hughes acquired a small judgment against the cemetery corporation amounting to about $216, and on said judgment instituted sequestration proceedings, in which one Samuel P. Hildreth was appointed permanent receiver of the corporation on September 17, 1915. Subsequently he was removed, and the present receiver, George W. Chauncey, was appointed.

All attempts thus far made to collect the petitioner's judgment have proved unsuccessful. The receiver cannot dispose of the lands of the corporation for burial purposes, at least not in sufficient quantities to

make any substantial progress in clearing up the indebtedness, because there is no demand for them; and those who oppose this application, and who are principally those connected with or favorable to the former management, insist that the lands cannot be disposed of in any other way, without a violation of the vested rights of the holders of the land purchase certificates, arising out of the provisions thereof, and of the statutory provisions above mentioned.

Thus we have the situation that here is an immense cemetery, ten times as large as is allowed by law, and very much larger than is required from a practical point of view, one that has not been developed, except a small part thereof, and the balance of which it is apparently impossible to develop for the purpose for which it was acquired; we have the corporation holding the same indebted in the amount of several hundred thousand dollars, with no assets available to pay these debts, except the great tract of unimproved land, which has never been used, and is not likely to be used for many years, if ever, for cemetery purposes. We have a receiver in possession, but unable to do anything to carry out the purposes of his receivership, and we have the former management sitting impassively indifferent to the rights and claims of the creditors, and also in effect denying the power of the court to give relief from such an intolerable condition. Their argument is that they are " within the law." I think, however, that such argument in this case, as in many others, overlooks the maxim of the common law, *"Apices juris non sunt jura."* See *Caldwell* v. *Ryan,* 210 Mo. 17, 43.

Such a state of things cannot be permitted to continue. In the first place, no lands in excess of 200 acres held by Pinelawn Cemetery can properly be considered as bound by the restrictions upon alienation

applicable to cemetery lands, because of the violation of the statute above referred to. The device above set forth for the evasion of the statute cannot be recognized as valid or legal procedure under the statute, to the prejudice of the creditors. It was evidently the intention of the legislature that a cemetery corporation should not be permitted to hold for cemetery purposes more than 200 acres of land, which must be in one tract; and the provisions relating to the consolidation of membership corporations must be read in connection with the provisions limiting the extent of cemeteries, and the two construed together. *Hascall* v. *King,* 162 N. Y. 134, 145 *et seq.*

So I hold that, although Pinelawn Cemetery acquired the legal title to the lands under the consolidation, it cannot hold them in excess of 200 acres (with perhaps lands in which burials have actually taken place) as devoted to cemetery purposes, and hence they are subject to sale under execution or by the receiver.

In addition to this the act of 1918 authorizes the sale of the lands not actually used for cemetery purposes under execution. The holders of the land purchase certificates cannot successfully urge that this act is unconstitutional as to them on the ground that they had a vested right in all lands belonging to the cemetery corporation, whether actually used for burial purposes or not, whereby they could insist that such lands should be disposed of only by granting the use of lots and plots for burial purposes, one-half the proceeds being paid to the certificate holders. It is a curious fact, which may be noted in passing, that the very judgment which is sought to be enforced is a judgment in an action brought to enforce land purchase certificates, as is pointed out above. I think that there was no such vested right, as against creditors of a cemetery corporation. If reliance be placed upon the case of

*People ex rel. Oak Hill Cemetery Association* v. *Pratt,*
129 N. Y. 68, it is to be noted *first,* that that case
related only to the right to assess cemetery lands, and
*second,* that the language of section 10 of chapter 133
of the Laws of 1847, as amended by chapter 708 of the
Laws of 1869, which the court held to exempt from
taxation all lands held for cemetery purposes by cor-
porations organized under that act, whether actually
used for burials or not, differed materially from the
language of section 450 of the Real Property Law. It
provided that, " The cemetery lands and property of
any association formed pursuant to this act shall be
exempt from all public taxes, rents and assessments
and shall not be liable to be sold on execution," etc.
Section 450 of the Real Property Law, which was
derived from chapter 310 of the Laws of 1879, pro-
vides on the other hand that, " No land *actually* used
and occupied for cemetery purposes shall be sold
under execution," etc. This would seem not to forbid
the sale on execution of parcels of land of cemetery
corporations which were not as yet laid out for ceme-
tery purposes, and in which no lots or plots had been
sold, and which could be sold separately without inter-
fering with lands so laid out, or those in which lots or
plots had been so sold. *Matter of City of New York*
(*Perry Avenue*), 118 App. Div. 874, was also a case
dealing with assessments against cemetery lands.

The obvious purpose of the legislature in adopting
chapter 310 of the Laws of 1879, and continuing its
provisions in section 450 of the Real Property Law,
was to prevent the desecration of burial places. This
legislation was not for the benefit of the land purchase
certificate holders. It certainly was not intended
thereby that a cemetery corporation should be per-
mitted to hold without limitation as to time tracts of
land unlimited in extent and wholly unused and

unnecessary for burial purposes, free from just claims of its creditors. Hence I think no vested right of the land purchase certificate holders was violated by the act of 1918.

Furthermore, the rights of the land purchase certificate holders extended only to one-half of the proceeds of the sale of the use of lots and plots for burial purposes. That right, it is true, cannot be taken away from them. But their interest was not in the land as such, and hence their rights do not preclude the sale for other purposes of lands not sold or used for burial purposes. Nor do I find anything in the Membership Corporations Law, or in the Real Property Law, to forbid such disposition. For this reason also I hold that no vested right was taken away by the act of 1918.

It may be noted in passing that the court has already ordered sales of two parcels of these lands, respectively of sixteen and nine acres in extent, to raise money to pay interest on a mortgage covering a portion of the tract of the cemetery corporation; and here it may be remarked that it is highly improper, if not actually fraudulent, to devote lands subject to mortgage to cemetery purposes, since the foreclosure of the mortgage might result in a desecration after burials had taken place.

Courts should be loath to hold unconstitutional a law the evident purpose of which was to facilitate the collection of the just debts of cemetery corporations, by making their property, not actually used for sepulture, or sold for such use, subject to execution. It is clearly contrary to public policy to leave the creditors of such corporations remediless, or with a remedy wholly inadequate, unless it is necessary to do so in order to preserve burial places from desecration.

I think the remedy given by the act of 1918 may be availed of by the owner of a judgment previously

recovered. *Laird* v. *Carton,* 196 N. Y. 169; *Moore* v. *Moore,* 208 id. 97. As to the decision of Mr. Justice Blackmar, which is relied on by the opposition, it is sufficient to say that the act of 1918 presents a new situation. The Tyndall judgment was, it is true, dock-eted in the name of the referee named therein, but it is for the benefit of all the land purchase certificate hold-ers, of whom Mr. Tyndall is one, and, therefore, he is entitled, as an interested party, to make this application.

I shall, therefore, grant the motion on reargument, and direct that so much of the lands of the cemetery corporation as are necessary to make the amount of the judgment in question, after satisfying claims hav-ing priority thereto, and which are so situated that they can be sold separate from any parts of said ceme-tery lands which have been laid out for cemetery pur-poses, or in which interments have been made, be sold for the benefit of all those interested in the judgment, of whom the moving party is one. The order will also direct the sale of all personal property subject to exe-cution, and this should be sold first.

I understand that the Tyndall judgment was made up as follows: $1,837.32 for moneys withheld by the corporation from the land purchase certificate holders, and $8,900.19 for interest for withholding the same and other sums due the said holders which were paid, however, pending the action or before. This interest, being in the nature of damages for withholding said moneys, constitutes a debt of the corporation, and not part of the trust moneys. In the distribution of the proceeds of the sales to be made under the order to be entered hereon the $1,837.32 should be first paid. Then the remaining proceeds should be divided half and half, one-half being paid to the land purchase certifi-cate holders, and the other half reserved for the satis-

faction of the remainder of the judgment and interest, including interest on the said sum of $1,837.32. Enough land must, therefore, be sold to allow for the full satisfaction of the judgment in this manner. If the Hughes judgment is prior in lien to the Tyndall judgment enough land must also be sold to provide for its payment, with interest, in priority to the payment of the $8,900.19 interest included in the Tyndall judgment.

When the sale has been made and the receiver has the proceeds in his hands application to the court may be made by any interested party for an accounting and distribution.

The order should explicitly describe, by metes and bounds or otherwise, the part of the lands to be excluded from the sale as being actually occupied or sold for burial purposes.

Ordered accordingly.