HELEN E. WOJTKOWIAK and Others, Plaintiffs, *v.* THE EVANGELICAL LUTHERAN ST. JOHN'S CHURCH OF BUFFALO, Defendant.

Supreme Court, Erie County, December 23, 1931.

*Jacob Jacobson*, for the plaintiffs.

*Rann, Vaughan, Brown & Sturtevant*, for the defendant.

HINKLEY, J. By stipulation of facts upon the trial of this action, the court must determine whether the consent of the board of supervisors is a prerequisite to the extension by defendant, a religious corporation, of its cemetery lands for burial purposes.

The defendant, a religious corporation, as defined by statute

(Religious Corporations Law, § 2), is the owner of cemetery lands in the town of Cheektowaga, Erie county, N. Y., legally acquired in accordance with statute (Religious Corporations Law, § 7). It is under contract to purchase contiguous land in the event that such land may be used by it for burial purposes. It is stipulated that if application were to be made to the board of supervisors in accordance with section 73 of the Membership Corporations Law (as amd. by Laws of 1931, chap. 189) to use such new land for burial purposes, such application would be denied. Plaintiffs, the sellers, contend that no such consent is essential.

Section 7 of the Religious Corporations Law, so far as applicable to this decision, is as follows:

" § 7. Acquisition of property by religious corporations for cemetery purposes; management thereof. A religious corporation may take and hold, by purchase, grant, gift or devise, real property for the purposes of a cemetery; or such lot or lots in any cemetery connected with it, as may be conveyed or devised to it."

The statute does not specifically state that a religious corporation may use such land so acquired for burial purposes. There can be no such arbitrary power implied because the use of cemetery lands by any corporation, religious or otherwise, for burial purposes, in a city, village or rural community, is always subject to the control of the police power of the governing forces in the interest of public health. (*People ex rel. O. H. C. Assn.* v. *Pratt*, 129 N. Y. 68; *Morton* v. *St. Patrick's R. C. Church Society*, 56 Misc. 71.)

There is nothing in the history of the Religious Corporations Law nor in that of the Membership Corporations Law to indicate that such police power should be curtailed or restricted. On the contrary, there is every indication that successive Legislatures have intended to, and have in many instances, given specific power to the local governing forces not only to control and regulate cemeteries but to prevent their creation or extension.

Section 72 of the Membership Corporations Law provides as follows:

" § 72. Consent of local authorities. No cemetery shall hereafter be located in any city or village, without the consent of the local legislative body of such city, or the board of trustees of such village."

From the year 1852 to date, the Legislature has made it unlawful, first, for any incorporated rural cemetery and later for any cemetery corporation, to take property or set apart any ground for cemetery purposes in certain counties, without the consent of the board of supervisors of such county or the board of aldermen of New York

city. Erie county was so included in 1896. (Laws of 1852, chap. 280; Laws of 1854, chap. 238; Laws of 1895, chap. 559; Laws of 1896, chap. 193; Laws of 1909, chap. 274; Memb. Corp. Law of 1926, § 73 [Laws of 1926, chap. 722, as amd. by Laws of 1931, chap. 189].)

The Legislature has, at no time, indicated that it desired to permit religious corporations to acquire land for burial purposes without local consent. Nor has the Legislature at any time indicated that it desired to exempt religious corporations from the provisions of the Rural Cemetery Law, later article 9 of the Membership Corporations Law of 1926. On the contrary, the Legislatures have been fearful lest that statute might be construed so broadly as to interfere with the use of *existing cemeteries* of religious corporations. The language used (§ 71) can have no other logical construction: " This article [at first Rural Cemetery Law and later article 9 of the Membership Corporations Law of 1926] * * * does not apply to a *cemetery belonging* to a religious or a municipal corporation." Likewise, the Legislature became fearful that former section 62 of the Membership Corporations Law of 1909 (as amd. by Laws of 1911, chap. 706) relating to certain counties, including Erie county, might be so broadly construed as to interfere with the use of *existing cemeteries*, that it provided in 1909 that " Nothing contained in this section shall prevent any ecclesiastical incorporation in existence on April fifteenth, eighteen hundred and fifty-four, in either of said counties, from *using* any burial ground *then belonging* to it within such county as it has been heretofore accustomed." (Laws of 1909, chap. 274.) That section later became section 73 of the present Membership Corporations Law (as amd. by Laws of 1931, chap. 189) and the phraseology was slightly changed to read: " Nothing contained in this section shall prevent any religious corporation in existence on April fifteenth, eighteen hundred and fifty-four, in any of said counties *from using* as heretofore any burial ground *then belonging* to it within such county."

The fundamental reason for the exercise of the police power of the government in controlling the creation, extension and use of land for burial purposes is in the interest of the public health. Genuine devotion to that interest can foster no discrimination in favor of a cemetery sanctified by religious service over that of a cemetery owned by a non-sectarian organization. There is basically no reason why a local governing board should discriminate in its desire to limit the use for burial purposes of land within the territorial limits of the particular section of the State over which it has control.

Had the Legislatures intended that religious corporations should be permitted to create cemeteries or extend their lands for burial purposes without local consent, they would have clearly so expressed that intention and had no fear lest the requirement of such local consents might interfere with the use of the existing burial grounds of religious corporations. Such legislation, however, would have done violence to the supreme police power of the governing forces in the promotion of the public health or in the alternative, have been ineffective because of the inherent governmental power to regulate and control burial grounds. To construe section 7 of the Religious Corporations Law to include the arbitrary right to use land for cemetery purposes and to construe section 71 of the Membership Corporations Law of 1926 as excepting religious corporations from the latter law would permit the creation of cemeteries by religious corporations in cities and villages notwithstanding section 72 of the Membership Corporations Law of 1926. Such a construction would make that sentence of section 73 concerning religious corporations in existence on April 15, 1854, surplusage.

There are seldom exact precedents for the interpretation of statutes. In this case, the court has applied general rules of statutory construction. The primary consideration in this decision has been to determine the legislative intent. The language has been construed according to its natural and most obvious sense. The statutes considered and all parts thereof are *in pari materia* and have been construed together in harmonizing them in arriving at the general purpose of the statutes and the remedy sought. There is nothing to indicate that the Legislature had any intention other than the plain reasonable import of the language employed in the statute. The vast growth of population in the State in the last century and the increasing absorption of rural communities by the congestion and extension of cities and villages have, in the interest of the public health, called for a corresponding increase in the exercise of the police power of the governing forces in relation to cemeteries. This decision recognizes and construes the development of legislation in accordance with such changes in the past and offers no impediment for the future growth of police power in proportion to increased population.

Judgment may be entered in accordance with this opinion.