Victor J. Orgera, J.
In this action the plaintiff seeks a judgment declaring that its property is exempt from real property taxes and that the assessments heretofore levied by *737 the defendants are invalid. The defendant Town of Babylon has counterclaimed for a permanent injunction restraining the plaintiff from using the taxed portions of its property for cemetery purposes.
The complaint alleges that the plaintiff is a not-for-profit cemetery corporation and the owner of 785.7 acres of contiguous property in the Town of Babylon; that this property is listed as six separate parcels on the tax rolls of the Town of Babylon; that commencing with the 1972-1973 tax year the defendants levied taxes on three of the parcels (400 acres) and classified the remaining three (385.7 acres) as exempt; and that the tax is invalid because all of plaintiff’s real property should be exempt from taxation pursuant to section 421 of the Real Property Tax Law.
The answer alleges that the plaintiff corporation was formed by the consolidation of 11 separate cemetery corporations as a result of which the plaintiff holds property for cemetery purposes in excess of that permitted by law; that the plaintiff failed to obtain the necessary consents, and that the property taxed has never been used for cemetery purposes. At the trial no evidence was offered in support of an allegation that the plaintiff’s use violates the town zoning ordinances, therefore this issue will not be considered by the court.
On June 17, 1899, Pinelawn, Brookwood, Elm Grove, Maple Grove, Oak Grove, Hollywood, Pine Grove and Lake Grove Cemeteries were incorporated by eight individuals pursuant to chapter 559 of the Laws of 1895. By resolution of the Town Board of the Town of Babylon dated June 22, 1900, these eight corporations were authorized to "take, hold * * * and use for Cemetery purposes two hundred (200) acres of land, each in the northern part of the Town of Babylon.” In 1901 William Locke, Jr., an incorporator of all eight corporations, and Julia Locke, his wife, conveyed approximately 200 acres to each of the afore-mentioned corporations. In 1902 an ex parte application resulted in an order of the Supreme Court, Suffolk County, consolidating these eight corporations together with three other previously formed cemetery corporations so as to form one corporation, the plaintiff herein. On September 28, 1911, the Town of Babylon, by quitclaim deed, conveyed to the plaintiff all of the land which plaintiff claimed to own at that time. The parties could offer no explanation for this conveyance, but in 1929 the Town of Babylon brought an action seeking to cancel the deed. That action was settled by the *738 town again giving a deed of the same property in consideration of the sum of $17,050, paid to it by plaintiff. Over the years the plaintiff has sold some 1,400 acres of the original property in 12 separate sales to other cemeteries.
During the first week of December, 1972, the defendant tax receiver sent tax bills for the year 1972-1973 to the plaintiff, briefly described as follows:
(a) Parcel 21590, Pinelawn Tax Map 56-2A — $81,693.00
(b) Parcel 21583, Pinelawn Tax Map 55-1A — 21,784.80
(c) Parcel 21587, Pinelawn Tax Map 55-4 — 5,987.70
(d) Parcel 21589, Pinelawn Tax Map 56-1 — Exempt
(e) Parcel 21591, Pinelawn Tax Map 56-2B — Exempt
(f) Parcel 21592, Pinelawn Tax Map 56-26 — Exempt
Those parcels carried as exempt and consisting of 385.7 acres have bodies interred therein or are otherwise used for cemetery purposes; the parcels taxed, which consist of 400 acres, have no bodies interred therein, nor buildings thereon.
Generally, all property within the State is subject to taxation unless some statute makes it exempt (People ex rel. Savings Bank of New London v Coleman, 135 NY 231). Such statutes are, however, strictly construed (People ex rel. Mizpah Lodge No. 518 v Burke, 228 NY 245).
Section 421 of the Real Property Tax Law, provides, inter alia: "1. (a) Real property owned by a corporation * * * organized or conducted exclusively for * * * cemetery purposes * * * and used exclusively for carrying out thereupon * * * such purposes * * * shall be exempt from taxation.”
Recently, the Appellate Division, Second Department, restated the three-step test which must be met before a property owner is entitled to a tax exemption: (1) the owner must be organized exclusively for the purposes specified in section 421 of the Real Property Tax Law; (2) the property must be used primarily in furtherance of those purposes, and (3) no pecuniary profit may inure to any officers, members or employees; nor may the property be used as a guise for profit-making corporations (Matter of New York Cardiac Center v Kondzielaski, 46 AD2d 810). One claiming the exemption has the burden of establishing its right by clear and convincing proof (Beverly Hills Cemetery Corp. v Rush, 201 Misc 534).
For property to be exempt under section 421 of the Real Property Tax Law, it must not only be owned but "used”. It is *739 not sufficient that it be set aside for use or that future use is contemplated. In connection with a cemetery, "use” means the interment of bodies therein or buildings or structures thereon which are necessary to some cemetery purpose. It is undisputed that there are no bodies interred on the taxed parcels, nor are any buildings or structures thereon, nor was there any evidence that they are needed for any cemetery purposes. Property which is idle or unused is not entitled to exemption (People ex rel. Blackburn v Barton, 63 App Div 581; People ex rel. Missionary Sisters v Reilly, 85 App Div 71).
The plaintiff places great reliance on People ex rel. Woodlawn Cemetery v Chambers (91 NYS2d 774); People ex rel. Bleakely v Sexton (240 App Div 869) and People ex rel. Oak Hill Cemetery Assn. v Pratt (129 NY 68). In Chambers, the court found that a service area of 2.2 acres was in fact being used for cemetery purposes and therefore exempt; Bleakely turned on the question as to whether or not the cemetery corporation was organized for profit and not on the size or the use to which it was put. In Pratt (supra, p 73) which involved a cemetery corporation owning 54 acres of land, section 10 of chapter 133 of the Laws of 1847, which had application therein, provided, in part, that: "[t]he cemetery lands and property of any association, formed pursuant to this act, shall be exempt from all public taxes, rates and assessments”. That statute did not make it a requirement that the lands be used for cemetery purposes so that the holding in Pratt is not controlling here. The Laws of 1847 also provided that a cemetery corporation may acquire land not exceeding 200 acres. All of the cases cited by the plaintiff involve cemetery corporations which were formed in accordance with the then-pertinent statutes. The plaintiff in this case is the product of a consolidation, which, while giving plaintiff title to some 2,000 acres, could not confer upon it the right to use more than 200 acres, the limit imposed by the statute then in force.
While the present president (since 1949) and his family have controlled Pinelawn since its inception, he offered no proof whatsoever that no pecuniary profit inured to him or his family or that the corporation was not a profit-making organization. On the contrary, at the trial it was adduced that one sale in 1931 was for the sum of $223,000, and that the present president’s family had a 30% interest in the 11 other sales. Without proof that no profit inured to the benefit of others than the corporation, the plaintiff has failed to meet the *740 burden imposed by New York Cardiac Center v Kondzielaski (supra).
Accordingly, the plaintiff is not entitled to a tax exemption as to Parcels 21590, 21583 and 21587, and the court declares that those assessments for the year 1972-1973 are valid.
The defendant town seeks to restrain the plaintiff from interring bodies in the taxed parcels on the ground that the plaintiff holds land in excess of that permitted by law for cemetery purposes. The plaintiff argues that section 45 of chapter 559 of the Laws of 1895 pertains only to lands acquired by condemnation and that even if this is not a correct interpretation of that statute, the 1902 consolidation conferred judicial approval for the plaintiff’s owning and holding in excess of 2,000 acres for cemetery purposes. They further argue that this principle was affirmed by the Appellate Division in Matter of Chauncey (191 App Div 359, 363). Contrary to this assertion, that court stated: "The claim that the cemetery association holds an amount of land in excess of that permitted by the law of its organization is entirely irrelevant to the question that we are discussing.” The lower court, in reviewing the history of that plaintiff corporation, commented that: "This procedure of forming eleven corporations to take over in the first place parts of this tract of land, making eleven contiguous but separate cemeteries, and then consolidating them into one, was patently adopted for the purpose of evading the statute then in force * * * which in effect forbade a cemetery corporation to acquire for cemetery purposes more than 200 acres of land in the aggregate.” (Matter of Chauncey, 106 Misc 534, 538.) This court does not agree with either of plaintiff’s claims and construes the 1895 law as limiting the number of acres that may be owned by one corporation for cemetery purposes to 200 acres whether acquired through condemnation or otherwise.[1] Chapter 559 of the Laws of 1895 were enacted to overcome a failure in the prior laws which, while they limited acquisition of cemetery property to 200 acres, did not provide for the acquisition of property by eminent domain (Matter of Lyons Cemetery Assn., 93 App Div 19). Furthermore, the order of consolidation cannot be interpreted as court approval of the plaintiff’s *741 holding more than 2,000 acres for this is inconsistent with statutory law then in existence and substantially carried over until today. It should be pointed out that had the consolidation not taken place, each separate cemetery corporation would have had to proceed to use the property for cemetery purposes and their failure to do so would permit the town to tax the property not used (People ex rel. Blackburn v Barton, supra; People ex rel. Missionary Sisters v Reilly, supra). The further claim that the conveyances by the town to the plaintiff at a time when it knew that the acreage involved was in excess of 200 constituted an approval for holding 2,000 acres does not help plaintiff, for the town was not asserting its governmental powers but was acting in its proprietary capacity. Even were this not so the town could not confer rights in excess of those authorized by the Legislature and its approval would be of no force and effect.
The plaintiff’s final argument that the defendants are estopped from contending that plaintiff’s operations and ownership of its land are invalid is without merit (Rodee v City of Ogdensburg, 165 App Div 651).
This court concurs with the observations of the lower court in Matter of Chauncey (supra) that the plaintiff has benefited for over three quarters of a century from a scheme designed to overcome the strictures of law prohibiting a cemetery corporation from holding more than 200 acres (now 250 by virtue of Not-For-Profit Corporation Law, § 1401) of land in the aggregate. To now permit the plaintiff to inter bodies on the taxed parcels would make no sense, as the plaintiff could later fail to pay the taxes with the likely result being that the County of Suffolk would become the owner of an unmarketable piece of property which would remain permanently off the tax rolls, thus achieving by indirection that which could not be achieved directly.[2] Accordingly, as the plaintiff’s ownership of land is in contravention of statutes, the town is entitled to a permanent injunction prohibiting the plaintiff from interring bodies in Parcels 21590, 21583 and 21587.
The State Cemetery Board has received copies of the pleadings herein. Their failure to intervene as they may have done *742 is an indication that no public policy will be offended by the determinations made herein.

. That statute also permitted the acquisition of real property not in excess of $200,000 in value for the purpose of the convenient transaction of its business, no portion of which shall be used for the purposes of a cemetery.

. Pursuant to sections 45 to 46 of the Suffolk County Tax Act (L 1920, ch 311, as amd by L 1929, ch 152) the County of Suffolk purchases all real estate within the county for which taxes have not been paid. It is required to pay the tax together with interest and charges and after the passage of three years acquires title in fee.